UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAMION G.V. DAVIS,

       Petitioner,

  v.                                       24-CV-223-LJV
                                                  DECISION & ORDER
MERRICK B. GARLAND, *et al.*,[1]

       Respondents.

---

The *pro se* petitioner, Damion G.V. Davis, has been detained in the custody of the United States Department of Homeland Security ("DHS") since October 2019—more than four and a half years. Docket Item 1.[2] On March 12, 2024, Davis filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.[3] The respondents—Attorney General Merrick B. Garland, DHS Secretary Alejandro Mayorkas, DHS Field Office Director Thomas Brophy, and BFDF Officer-in-Charge Jeffrey Searls[4] (collectively "the government")—then moved to dismiss the petition,

---

[1] Davis's petition and thus the official case caption do not include periods after Davis's second middle initial and Garland's middle initial. The Clerk of the Court shall correct that error.

[2] Unless otherwise noted, docket citations are to case number 24-cv-223, and page numbers in docket citations refer to ECF pagination.

[3] Davis filed his petition in the United States District Court for the Middle District of Pennsylvania. Docket Item 1. On March 14, 2024, the case was transferred to this Court under 28 U.S.C. § 1406 on venue grounds. Docket Item 6.

[4] All respondents are sued in their official capacities. Docket Item 1 at 3.

Docket Item 12, and Davis responded to that motion, Docket Item 13.[5]  Davis also has moved for the appointment of counsel.  Docket Item 14.

For the reasons that follow, this Court grants the government's motion and dismisses the petition without prejudice.  Davis's motion for the appointment of counsel is denied as moot.

## **FACTUAL AND PROCEDURAL BACKGROUND**[6]

Davis is a native of Jamaica.  Docket Item 1 at ¶ 8.  He "entered [t]he United States in 1989 [as a lawful permanent resident] to be with his American father, and he has been living [here] ever since."  *Id.*; *see id.* at 30; *see also Davis v. Att'y Gen.*, 2024 WL 866034, at *1 (3d Cir. Feb. 29, 2024) ("Davis was admitted to the United States as a lawful permanent resident on November 2, 1989, when he was 11.").

---

[5] Before the respondents moved to dismiss Davis's petition, he filed a memorandum in support of it.  *See* Docket Item 11.

[6] The following facts are taken from Davis's petition, Docket Item 1.  The Court also takes judicial notice of Davis's immigration proceedings, including previous decisions issued by this Court and other courts.  *See Spiegelmann v. Erfe*, 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018) ("In deciding a motion to dismiss a habeas petition, the Court must confine its consideration to facts stated on the face of the petition, in documents appended to the petition or incorporated in the petition by reference, and to matters of which judicial notice may be taken." (alterations, citation, and internal quotation marks omitted)); *Pina Morocho v. Mayorkas*, 2023 WL 1995283, at *3 (S.D.N.Y. Jan. 25, 2023) ("In addition to the facts alleged in the petition itself, a court faced with a Rule 12(b)(6) motion may consider any matter of which it may take judicial notice, including the proceedings of other courts of record—'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991))), *report and recommendation adopted sub nom. Morocho v. Mayorkas*, 2023 WL 1993881 (S.D.N.Y. Feb. 14, 2023).

On October 17, 2019, DHS "served Davis with a notice to appear, charging him as removable under 8 U.S.C. § 1227(a)(2)(E)(ii) for violating a protective order." *Davis*, 2024 WL 866034, at *1; Docket Item 12-4 at 146 (notice to appear).  On the same day, several ICE agents "entered [Davis's] home and took [him] into custody."  Docket Item 1 at ¶ 9.  "DHS later added [other] charges of removability based on Davis's . . . criminal history."  *Davis*, 2024 WL 866034, at *1.

On February 21, 2020, an immigration judge "sustained the charge of removability under certain grounds."  *Id.*; Docket Item 12-4 at 153-56 (immigration judge's decision); Docket Item 1 at ¶ 9 (stating that due "to his criminal convictions, . . . Davis was ordered removed from [the United States] in 2020").  Davis appealed that decision to the Board of Immigration Appeals, "which affirmed the [i]mmigration [j]udge's decision."  *Davis*, 2024 WL 866034, at *1.

Davis then filed a petition for review in the United States Court of Appeals for the Third Circuit.  *Id.*  He argued that "he had derived citizenship from his father" under a previous version of 8 U.S.C. § 1432(a)(3) that had been repealed in 2000.  *Davis*, 2024 WL 866034, at *1.  Davis also contended—"[f]or the first time"—that "the second clause of [the same repealed statute] . . . violate[d] the equal protection guarantees of the Fifth Amendment as applied to him."  *Id.*  On December 30, 2021, a Third Circuit panel stayed Davis's removal and appointed counsel for Davis's appeal.  *See Davis v. Att'y Gen.*, Case No. 21-2235, Docket Item 34 (3d Cir. Dec. 30, 2021).

On June 9, 2022, while his petition for review was pending before the Third Circuit, Davis filed a petition under 28 U.S.C. § 2241 in this Court ("the June 2022

3

habeas action").⁷  *Davis v. Garland*, Case No. 22-cv-443, Docket Item 1 (W.D.N.Y. June 9, 2022).  On February 7, 2023, this Court granted his petition in part.  *Davis v. Garland*, 2023 WL 1793575, at *9 (W.D.N.Y. Feb. 7, 2023), *appeal withdrawn*, 2023 WL 6897443 (2d Cir. July 27, 2023).  More specifically, this Court found that Davis's continued detention, absent a constitutionally required bond hearing, violated his right to procedural due process.  *Id.* at *4-9.  It therefore ordered that

> Davis must be released unless, within 14 calendar days from the date of this decision and order, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Davis's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or protecting others or the community.

---

⁷ Before filing a habeas petition in this District, Davis filed two petitions for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania.  *See Davis v. Att'y Gen.*, Case No. 21-cv-1260, Docket Item 1 (M.D. Pa. July 19, 2021); *Davis v. Garland*, Case No. 22-cv-20, Docket Item 1 (M.D. Pa. Jan. 4, 2022).  On June 13, 2022, Davis's first petition was dismissed after he received a bond hearing in April 2022, *see Davis*, Case No. 22-cv-443, Docket Item 12-2 at 219-35; Davis's second petition was dismissed for the same reason a few months later, *see Davis v. Warden of Pike Cnty. Corr. Facility*, 2022 WL 4391686 (M.D. Pa. Aug. 18, 2022), *report and recommendation adopted*, 2022 WL 4389543 (M.D. Pa. Sept. 22, 2022).  *See Davis v. Garland*, 2022 WL 17155828, at *2 (W.D.N.Y. Nov. 22, 2022) (summarizing this history).  But in considering Davis's petition in the June 2022 habeas action, this Court held that because the immigration judge who conducted the April 2022 bond hearing "did not consider alternatives to detention before denying Davis's release, his continued detention violate[d] due process."  *Davis v. Garland*, 2023 WL 1793575, at *9 (W.D.N.Y. Feb. 7, 2023), *appeal withdrawn*, 2023 WL 6897443 (2d Cir. July 27, 2023).  This Court therefore ordered that Davis be afforded another hearing.  *Id.*

Davis filed all three of his prior habeas petitions—the two in the Middle District of Pennsylvania and his petition in the June 2022 habeas action—*pro se*.  *See Davis*, Case No. 21-cv-1260, Docket Item 1; *Davis*, 2022 WL 4391686, at *1; *Davis*, 2022 WL 17155828, at *1.  In the June 2022 habeas action before this Court, Davis subsequently was represented by two attorneys who filed an amended petition on his behalf.  *See Davis*, Case No. 22-cv-443, Docket Item 11 (W.D.N.Y. Aug. 1, 2022) (amended petition).  This Court later granted the motion of one of Davis's attorneys to withdraw from the case.  *Davis v. Garland*, 2023 WL 9474066, at *2 n.6 (W.D.N.Y. Dec. 21, 2023).

*Id.* at *9.  And it further ordered that "[a]s part of that calculus, the decisionmaker must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on conditions, that could reasonably address the government's interest in detaining Davis."  *Id.*

Following the Court's order, Davis received a bond hearing before Immigration Judge Robert P. Driscoll ("IJ Driscoll") on February 16, 2023.  *Davis*, Case No. 22-cv-443, Docket Item 24-6 (W.D.N.Y. Apr. 20, 2023) (transcript of bond hearing); *see also Davis v. Garland*, 2023 WL 9474066, at *2-3 (W.D.N.Y. Dec. 21, 2023) (describing hearing).  IJ Driscoll then issued a written decision denying Davis's "request for a change in custody status."  *Davis*, Case No. 22-cv-443, Docket Item 20-1 at 7 (W.D.N.Y. Mar. 9, 2023).  More specifically, IJ Driscoll found that DHS "ha[d] established by clear and convincing evidence that [Davis] presents a current danger to the community" and that "no bond, alternative to bond, or combination thereof could address the [g]overnment's interest in protecting the community and reasonably ensure [Davis's] appearance in future proceedings."  *Id.*

Davis then asked this Court to enforce its prior order, *id.*, Docket Item 24 (W.D.N.Y. Apr. 20, 2023) (motion to enforce), arguing that IJ Driscoll had "failed to abide by this Court's [decision ordering a bond hearing] in two critical ways"—that is, by failing to act as a "neutral decisionmaker" and to hold the government to the correct burden of proof, *id.*, Docket Item 24-1 at 5-7 (W.D.N.Y. Apr. 20, 2023) (memorandum in support of motion to enforce).  On December 21, 2023, this Court issued a decision and order denying that motion, finding that the bond hearing conducted by IJ Driscoll

5

complied with its order, and holding that Davis therefore was not entitled to further relief. *See Davis*, 2023 WL 9474066, at *12.

After this Court issued that decision, Davis filed a motion for reconsideration *pro se*. *See Davis*, Case No. 22-cv-443, Docket Item 34 (W.D.N.Y. Jan. 19, 2024). He also filed the petition at bar in the Middle District of Pennsylvania before its transfer to this Court. *See* Docket Items 1 and 6. The government moved to dismiss the petition, Docket Item 12, and the parties briefed the motion as described above.

## DISCUSSION

### I. HABEAS PETITION[8]

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Davis says that his ongoing detention—which now has lasted for more than four and a half years—violates the Fifth and Eighth Amendments of the Constitution. Docket Item 1 at ¶¶ 16, 53-59. He further argues that "his continued

---

[8] On June 24, 2024, Davis filed a notice stating that he was no longer being held at BFDF but is "now located" in Florida. Docket Item 15. Davis's notice did not say whether he was still being held in federal detention; in the absence of any evidence that he is not, the Court assumes that he is.

The fact that Davis is no longer being held in this District does not deprive the Court of jurisdiction over his petition. Although "to entertain a habeas corpus petition under 28 U.S.C. § 2241, a court must have jurisdiction over the petitioner's custodian[,] . . . [j]urisdiction is evaluated at the time the petition is filed, and is not impacted by subsequent transfers of the [p]etitioner, even transfers outside the judicial district in which the petition was properly filed." *Golding v. Sessions*, 2018 WL 6444400, at *2 (S.D.N.Y. Dec. 6, 2018) (internal quotation marks and italics omitted). This Court therefore has jurisdiction over Davis's petition and decides the government's motion.

detention . . . subjects him to unconstitutional conditions[,] . . . necessitat[ing] his prompt release." *Id.* at ¶ 60; *see also id.* at ¶¶ 61-62.  In response, the government says that Davis's petition should be dismissed as premature because Davis's removal order only became final on February 29, 2024.[9]  Docket Item 12-1 at 9-11.  For the reasons that follow, this Court agrees with the government.

## II. STATUTORY BASIS FOR DETENTION

To assess Davis's claims, the Court must first determine the statutory authority under which he is held.  "The Immigration and Nationality Act ('INA') provides for the detention of immigrants under various circumstances."  *Hechavarria v. Sessions*, 891 F.3d 49, 51 (2d Cir. 2018).  "Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable."  *Id.* at 57.  Section 1231(a), on the other hand, applies to those noncitizens who have been determined to be removable.  *Id.* at 54-55.  This section provides for a "removal period," which it defines as the 90

---

[9] Davis also says that his detention violates the Bail Reform Act of 1984.  *See* Docket Item 1 at ¶ 53.  In its motion to dismiss, the government first argues that Davis clearly is not entitled to relief under the Bail Reform Act and that the petition should be dismissed for that reason alone.  Docket Item 12-1 at 8-9.  In other words, the government argues that this Court need only reach the merits of Davis's constitutional claims to the extent this Court "construes this action as a successive habeas petition." *Id.* at 9 (bold, capitalization, and underlining omitted).

The government is correct that the Bail Reform Act cannot "preclude the government from detaining [Davis] pursuant to the [Immigration and Nationality Act ('INA')] as a . . . [noncitizen] subject to removal."  *United States v. Lett*, 944 F.3d 467, 471 (2d Cir. 2019).  As the Second Circuit has explained, the Bail Reform Act "does not preclude the government from exercising its independent detention authority under the INA."  *Id.* at 470.  So because Davis is being detained under the INA, *see* Section II, *infra*; *see also* Docket Item 12-1 at 8-11, he is not entitled to relief under the Bail Reform Act.  But Davis's petition also raises constitutional challenges to his detention, *see* Docket Item 1, and the Court therefore addresses whether his detention under the INA violates the Constitution.

7

days "following an order of removal during which 'the Attorney General shall remove the [noncitizen].'" *Id*. at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).  Under the statute's explicit terms, this period begins "on the latest" of three possible dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B); *see also Hechavarria*, 891 F.3d at 54-55.  So if the removal period has begun, the noncitizen is detained under section 1231(a); if it has not yet begun, the noncitizen is detained under section 1226.  *Hechavarria*, 891 F.3d at 54-55.

As described above, Davis was detained for more than four and a half years while removal proceedings were ongoing and while his appeal was pending before the Third Circuit.  *See* Docket Item 1 at ¶ 9; *Davis*, 2024 WL 866034, at *1.  Moreover, the Third Circuit stayed his removal order while its decision in his case was pending.  *See Davis*, Case No. 21-2235, Docket Item 34.  While Davis was awaiting the Third Circuit's decision, he was detained under section 1226(c) because the removal period had not yet begun.  *See* 8 U.S.C. § 1231(a)(1)(B)(ii).  Indeed, this Court's prior decision ordering a bond hearing was based on the fact that, at that time, he was detained under section 1226(c).  *See Davis*, 2023 WL 1793575, at *3-4 & n.5.

But on February 29, 2024—less than five months ago—the Third Circuit issued a final order in Davis's case, denying in part and dismissing in part his appeal.  *Davis*, 2024 WL 866034, at *5.  As the government argues, Docket Item 12-1 at 11, the

8

"removal period" imposed by section 1231(a)(1)(B) began on that date.  Therefore, his detention currently is governed by section 1231(a).

### III.  DUE PROCESS

Davis argues that his continued detention violates the Due Process Clause.  *See* Docket Item 1 at 21-24.  The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty."  *Id.* (citations and internal quotation marks omitted).  "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner."  *Id.*  "This requirement has traditionally been referred to as 'procedural' due process."  *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint."  *Id.* (citations and internal quotation marks omitted).  Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable

9

doubt, may take a person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyer v. Doe*, 457 U.S. 202, 210 (1982).  At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

As discussed above, Davis now is detained under 8 U.S.C. § 1231(a), *see* Section II, *supra*, and his detention therefore must be assessed according to the standards that apply to noncitizens with final orders of removal.  *See Demore*, 538 U.S. at 527-28 (noting that due process inquiry differs depending on whether petitioner is held under section 1226 or section 1231).  Section 1231 provides that the government "shall detain" noncitizens with final orders of removal "[d]uring the removal period," 8 U.S.C. § 1231(a)(2), and it does not limit the government's power to detain during that period.  Taken on its own terms, then, section 1231 gives the government power to detain "removable" noncitizens without setting any limits on the process that must be afforded to those held.  *See Zadvydas*, 533 U.S. at 688-89.

But in *Zadvydas,* the Supreme Court responded to "constitutional concerns" that might arise when the statute is construed that way and instead interpreted it to "contain an implicit 'reasonable time' limitation." *Id.* at 682, 689.  And the Court deemed a removal period of up to six months to be "presumptively reasonable." *Id.* at 701.

Once the Third Circuit issued a final decision in his case, Davis's removal order became final, see Davis, 2024 WL 866034, and the removal period under section 1231(a) began to run. Because it has been less than five months since the Third Circuit's decision, Davis's detention during the removal period is well within the time deemed presumptively reasonable—and, indeed, constitutional—by the Supreme Court. Zadvydas, 533 U.S. at 701. Therefore, Davis's current detention does not violate the Due Process Clause. See id.; Blanco v. Nielsen, 2019 WL 4688977, at *4 (W.D.N.Y. Sept. 26, 2019) (holding that petitioner's procedural and substantive due process rights had not been violated when he had been detained under section 1231 for less than six months); see also Wang, 320 F.3d at 147 (holding that petitioner's detention under section 1231 absent a bonding hearing did not violate his right to substantive due process under Zadvydas where his removal was "reasonably foreseeable" and in fact "imminent").

The fact that Davis has been detained for more than four and a half years in total—a very long time, to be sure—does not change that analysis. In Sanusi v. INS, 100 F. App'x 49 (2d Cir. 2004) (summary order), the Second Circuit held that while the six-year duration of the petitioner's detention was "extremely regrettable," it was not unconstitutional, id. at 51. Indeed, the Second Circuit held that because the petitioner's "detention [was] prolonged primarily by [his own] pursuit of final judicial review of his claims, [the court could] not say that th[e] duration in itself violate[d] due process." Id.

11

In light of the parallel facts here, Davis has no viable due process challenge, at least at this time.[10]

But that does not mean that Davis's detention could never become unconstitutional. After the six-month period has expired, if a noncitizen detained under section 1231(a) shows "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," then the burden shifts to the government to rebut that evidence. *Zadvydas*, 533 U.S. at 701. And if the government does not

---

[10] Davis also stated that because he has certain "high-risk factors . . . , his continued detention at [BFDF] subjects him to unconstitutional conditions for his health" thus "necessitat[ing] his prompt release." Docket Item 1 at ¶ 60. Similarly, he asserted that the government "has failed to protect [him] from [an] assault that caused him to [require surgery to have a t]itanium [i]mplant in [h]is face," which in turn led him to develop "high [b]lood [p]ressure." *Id.* at ¶ 61. Either the assault or the surgery also caused him to suffer a "[s]troke" and a "[m]ild [h]eart [a]ttack." *Id.* And he said that he had been assaulted not only by other individuals detained at BFDF but also by corrections officers there. *Id.* at ¶ 62.

The Court construes these claims as asserting that the government violated Davis's Fifth Amendment rights by subjecting him to "unconstitutional conditions of confinement" at BFDF. *See Valenzuela Arias v. Decker*, 612 F. Supp. 3d 307, 316 (S.D.N.Y. 2020) ("Immigration detainees can establish a due process violation for unconstitutional conditions of confinement by showing that a government official 'knew, or should have known[,]' of a condition that 'posed an excessive risk to health,' and failed to take appropriate action." (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017))). "The proper remedy for a conditions[ ]of[ ]confinement claim under [s]ection 2241 is the improvement of [the p]etitioner's allegedly harsh conditions of confinement." *Cohen v. Jamison*, 2023 WL 3511124, at *2 n.2 (S.D.N.Y. Apr. 10, 2023) (citation and internal quotation marks omitted), *reconsideration denied*, 2023 WL 3412762 (S.D.N.Y. May 12, 2023).

Because Davis is no longer being held at BFDF, *see* Docket Item 15, any relief that the Court could grant Davis based on his conditions of confinement there—namely, relief from those conditions—now is impossible. Davis's claims for unconstitutional conditions of confinement therefore are moot. *See Cohen*, 2023 WL 3511124, at *2 ("Courts have held that a [section] 2241 challenge to conditions of confinement will be considered moot where the petitioner has been transferred to a different facility." (alteration and internal quotation marks omitted) (collecting cases)).

meet that burden, the noncitizen must be released.  *Id.* at 699 ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").  Therefore, if Davis's detention continues beyond the period that is presumptively reasonable, he may again ask a court for relief.

### IV.  EXCESSIVE BAIL CLAUSE

Davis also argues that his continued detention violates the Eighth Amendment's prohibition of "excessive bail."  *See* Docket Item 1 at ¶ 57.  More specifically, he argues that because "excessive bail" violates the Constitution, the government's failure to grant him bail after more than four and a half years of detention violates his constitutional rights.  *See id.* ("[I]f[] excessive bail can[]not [be] required, then what about no bail?").

The Second Circuit has held that there is "no constitutional distinction between requiring excessive bail and denying bail altogether in the absence of legitimate reasons."  *United States ex rel. Goodman v. Kehl*, 456 F.2d 863, 868 (2d Cir. 1972).  Nonetheless, the Court finds that Davis has failed to show that he has been denied bail in violation of the Eighth Amendment.  The right to bail under that amendment is "not absolute," and courts have recognized that bail may be denied on a showing that an individual is a flight risk or presents a "substantial threat to the community."  *Danylocke v. Dalsheim*, 662 F. Supp. 961, 961 (S.D.N.Y. 1987).  Moreover, and as noted above, Davis was afforded a bond hearing in February 2023 where the government demonstrated "by clear and convincing evidence before a neutral decisionmaker that Davis's continued detention [wa]s necessary to serve a compelling regulatory purpose."  *Davis*, 2023 WL 9474066, at *1-4.  And this Court already has rejected Davis's challenge that the immigration judge failed to provide a constitutionally adequate bond

13

hearing. *See id.* at *6-12. So Davis has not shown that he was denied bail in violation of his constitutional rights.

Second, to the extent that Davis's petition asks this Court itself to grant him bail, Docket Item 1 at ¶ 66, the Court declines to do so. The Court already has explained that under *Zadvydas*, Davis's detention under section 1231 is presumptively constitutional. *See* Section III, *supra*. Because Davis has no constitutional right to additional process at this time, he also has no constitutional right to bail. As this Court has observed, "there is little reason to believe that the Excessive Bail Clause might provide relief for mandatory detention . . . when the Due Process Clause does not." *Sankara v. Barr*, 2019 WL 1922069, at *9 (W.D.N.Y. Apr. 30, 2019).

## **CONCLUSION**

For the reasons stated above, the government's motion to dismiss, Docket Item 12, is GRANTED. Davis's petition, Docket Item 1, is dismissed without prejudice to resubmission after the six-month period of detention under section 1231 has expired. Davis's motion for counsel, Docket Item 14, is DENIED as moot. The Clerk of the Court shall close this case.

SO ORDERED.

Dated:   July 10, 2024
         Buffalo, New York

                                                */s/ Lawrence J. Vilardo*
                                                LAWRENCE J. VILARDO
                                                UNITED STATES DISTRICT JUDGE